# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| SUSAN P. HILTON, )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>**Acting Commissioner of Social Security,** )<br>)<br>**Defendant.** ) | Civil Action No. 7:17cv123 |

## MEMORANDUM OPINION

Plaintiff Susan P. Hilton ("Hilton") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Hilton alleges that the Administrative Law Judge ("ALJ") erred by: (1) finding that Hilton engaged in substantial gainful activity through her date last insured; (2) failing to give proper weight to Hilton's treating physician; and (3) failing to perform a proper function-by-function analysis. I find that the ALJ's conclusion that Hilton engaged in substantial gainful activity through her date last insured is not supported by substantial evidence. I further find that the ALJ failed to provide a sufficient explanation for the weight given to the treating physician's opinion. As such, **I GRANT** Hilton's Motion for Summary Judgment (Dkt. No. 12), **DENY** the Commissioner's Motion for Summary Judgment (Dkt. No. 14) and **REMAND** for further consideration by the Commissioner.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

support the Commissioner's conclusion that Hilton failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted).

## **CLAIM HISTORY**

Hilton filed for DIB on January 5, 2013, claiming that her disability began on July 20, 2010, due to degenerative joint disease of the right knee, left hip, and lumbar spine, arthritis, and muscle tearing in the right knee. R. 16, 167–68, 186. Hilton's date last insured was December 31, 2010; thus she must show that her disability began on or before this date and existed for twelve

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

continuous months to receive DIB.[2] R. 183; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Hilton's applications at the initial and reconsideration levels of administrative review. R. 72–76, 78–83. On November 13, 2015, ALJ Thomas W. Erwin held a hearing to consider Hilton's claims for DIB. R. 36–70. Counsel represented Hilton at the hearing, which included testimony from vocational expert Ricky D. Bradley. On December 22, 2015, the ALJ entered his decision analyzing Hilton's claims under the familiar five-step process[3] and denying her claim for benefits. R. 16–30. The ALJ found that Hilton was insured at the time of the alleged disability onset. The ALJ found that during the period of her alleged disability Hilton engaged in substantial gainful activity by working at an arts and crafts store she owned through the date last insured. R. 18. Accordingly, the ALJ determined at step one that Hilton was not disabled because she was engaging in substantial gainful activity. Id.

In addition, the ALJ continued with the five step process and made an alternative finding at step four, concluding that Hilton was not disabled. R. 19–30. The ALJ determined that Hilton suffered from the severe impairments of degenerative joint disease of the right knee, degenerative disc disease of the lumbar spine, history of right ankle fracture, and hip dysfunction. R. 20. The ALJ determined that these impairments, either individually or in

---

[2] Hilton was 55 years old on her date last insured, making her a person of advanced age. R. 183, 72.

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

3

combination did not meet or medically equal a listed impairment. Id. The ALJ specifically considered listings 1.02 (major joint dysfunction), 1.03 (reconstructive surgery of major weight-bearing joint), and 1.04 (disorders of the spine). The ALJ determined that Hilton retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 21. Specifically, the ALJ found that Hilton can only occasionally operate foot controls with the right lower extremity, climb, stoop, kneel, crouch, or crawl, and can never be exposed to hazardous machinery, unprotected heights, or climb ladders, ropes or scaffold. Id.

The ALJ determined that Hilton was capable of performing her past relevant work as a phlebotomist and sales clerk. R. 29. Thus, the ALJ concluded that Hilton was not disabled. R. 30. Hilton appealed the ALJ's decision and the Appeals Council denied her request for review on January 30, 2017. R. 1-3.

## ANALYSIS

Hilton alleges that the ALJ erred by: (1) finding that Hilton engaged in substantial gainful activity through her date last insured; (2) failing to give proper weight to Hilton's treating physician; and (3) failing to perform a proper a function-by-function analysis.

**A. Relevant Medical History**

Hilton has a long history of right knee and back pain. Records indicate Hilton's right knee issues date back to 1977, when her knee locked up during a run in basic training. R. 332. On June 28, 2010, James Lovelace, M.D. performed a right knee arthroscopy with partial medial meniscectomy and removed painful hardware from Hilton's right ankle.[4] Following the surgery, Hilton continued to consistently complain of pain in her knee and ankle, as well as back pain,

---

[4] Prior to the relevant period, in September 2009, Dr. Lovelace also performed a right knee arthroscopy with partial medial minescectomy. R. 309. Following the surgery, Hilton completed physical therapy, but continued to complain of pain, swelling, and weakness. R. 271, 272, 273. Hilton also had a right knee arthroscopic surgery in 2003. R. 22, 23.

4

during follow up visits with Dr. Lovelace. R. 270, 276–279. In August 2010, Dr. Lovelace administered steroid injections, which provided temporary relief. R. 277, 278.

In February 2011, and again in April 2011, Hilton presented to the Salem VA Medical Center for a Compensation and Pension examination concerning her left hip, low back, and right knee. R. 338–49, 331–38. On examination, Hilton had antalgic gait and limited range of motion in her left hip and right knee. R. 334, 335, 339, 341. She complained of back pain, unsteadiness, and weakness, and used a cane and knee brace. R. 343–44. Hilton was given a 10% disability rating for her knee by the Veterans Administration ("VA") in 2010, and continued to have a 10% disability rating for her knee until approximately 2013. R. 22, 23. Hilton testified at the hearing before the ALJ that the ALJ had given her a 30% disability rating on her right knee, 20% on her back, and 10% on her left hip. R. 22.

Dr. Lovelace completed a form on November 12, 2015, where he indicated that Hilton could sit, stand, and walk less than two hours, and would be absent from work about three times a month as a result of her impairments. R. 631–32. Dr. Lovelace found that the limitations related back to July 20, 2010. R. 632. State agency doctors Luc Vinh, M.D., and Joseph Duckwall, M.D., both found that there was insufficient evidence to find Hilton disabled during the required time frame, i.e. between her alleged onset date of July 20, 2010 and her date last insured of December 31, 2010. R. 74, 81.

**B. Substantial Gainful Activity**

Hilton challenges the ALJ's determination that she engaged in substantial gainful activity through her date last insured, December 31, 2010. Hilton contends that her disability began in July 2010 and that she was not able to engage in substantial gainful activity after that date. A

finding that Hilton's work activities amount to substantial gainful activity will preclude a finding of disability.

Hilton was the self-employed owner of an arts and crafts store which closed due to lack of business. The ALJ found that Hilton worked after July 2010 to close the store. Hilton contends that the evidence does not support the determination that she worked during this period because the store did not close in 2010 and because her work at the store did not amount to substantial gainful activity. Hilton admits that she "struggled in her testimony" when asked to recall the dates she worked at the store, and acknowledges that there is evidence in the record "arguably support[ing] a determination that her business officially closed in or around December of 2010." Pl.'s Br. at 4–5, Dkt. No. 13. However, Hilton maintains that there is no evidence that she engaged in *full-time* work activities between her knee surgery in June 2010 and her date last insured in December 2010. Pl.'s Br. at 5, Dkt. No. 13. The Commissioner counters that the record contains substantial evidence that Hilton worked at least 40–60 hours a week between July and December 2010 at her arts and crafts store.

Hilton equivocated in her testimony on when she closed her arts and crafts store. First, the ALJ asked, "did you literally close the business at the end of the year, December 31st of 2010." Hilton answered, "Yes, Sir." However, subsequently, she stated, "I hope I got that date right when I worked, because I can't remember that business. I can't remember the dates." R. 51. When questioned by her attorney, "You had a second knee surgery in June of 2010 . . . did you work after that any?" Hilton responds, "No." R. 53. However, Hilton's work history report indicates she worked at the retail store from October 2008 to December 2010, and, during a visit in April 2011, she reported to the VA that she retired in December 2010. R. 195, 336.

6

Conversely, during a visit in February 2011, she reported to the VA that she had stopped working in the summer of 2010, "due to surgery on her right ankle." R. 341.

In describing the "discrepancy in the evidence as to when [Hilton] stopped working" at her arts and crafts store, the ALJ wrote:

> At first [Hilton] testified that she worked at the store until it closed in December [] 2010; later she indicated that the closure was in December of 2009, and she did not return to work after a right knee surgery in June of 2010. The medical evidence and Hilton's initial statements in [her disability report and function report] indicate a December 2010 close of business. Moreover, [Hilton] testified that she worked for a year after the business moved, and a contemporaneous treatment note indicates that the move occurred in December of 2009.[5] This further supports the conclusion that the business closure was in December of 2010, as opposed to an earlier date.

R. 18. Thus, the ALJ concluded, "Based on the totality of the evidence, the undersigned finds that [Hilton] continued to operate her business through the date last insured, and this work constitutes substantial gainful activity." R. 18–19. The ALJ discussed Hilton's conflicting testimony, considered the various records containing information on the store's closure, and found that, on balance, she closed her store in December 2010. Conflicting evidence may exist about whether Hilton's business continued to operate after the date last insured. Indeed, a different ALJ may have reached a different conclusion. Nevertheless, the standard on review is whether substantial evidence – more than a scintilla – exists to support the ALJ's decision. Here, I find that substantial evidence supports the ALJ's conclusion regarding when Hilton closed her store.

Having determined that Hilton operated her business through her date last insured, the ALJ next addressed whether that work constituted substantial gainful activity. The initial consideration for determining a claimant's disability is whether she is engaged in substantial

---

[5] This treatment note, from Hilton's treating physician, Dr. James Lovelace, is dated December 16, 2009, and indicates "6 [week] post op[erative] – [right] knee scope" and notes "done a lot moving from one store to another." R. 272.

7

gainful activity, defined as "work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Work activity is substantial if it involves performing significant physical or mental activities whether or not part time, and irrespective of whether the claimant does less, or is paid less, or has fewer responsibilities than before. 20 C.F.R. § 404.1572(a). Gainful work activity is the type of work usually performed for pay or profit, regardless of whether a profit is realized. 20 C.F.R. § 404.1572(b). However, substantial gainful activity does not include activities such as household tasks, taking care of oneself, social programs, or therapy. 20 C.F.R. § 404.1572(c).

Self-employed individuals are evaluated under 20 C.F.R. § 404.1575, which provides three tests for determining whether a claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1575(a)(2)(i)–(iii); see also Titles II & Xvi: Determining Whether Work Is Substantial Gainful Activity-Self-Employed Persons, SSR 83-34 (S.S.A. 1983). Under test one, a claimant engages in substantial gainful activity if he renders significant services to the operation of the business and receives a substantial income from the business. The ALJ found Hilton did not satisfy test one because she did not receive substantial income from her business, based on her reported earnings.[6] However, the ALJ found that tests two and three were satisfied, showing Hilton had engaged in substantial gainful employment. R. 19.

Under test two, a claimant engages in substantial gainful activity if his work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in the community in the same business. 20 C.F.R. § 404.1575(a)(2)(ii); see also SSR 83-34. Noting Hilton's testimony that her job duties included assisting customers, teaching classes, and doing inventory, the ALJ found that Hilton's work as an arts and crafts store owner was "comparable to that of unimpaired individuals in her

---

[6] Hilton's reported earnings for 2010 were $275.50. R. 181.

8

community because she worked at least 40 hours per week and did most of the work on her own."[7] R. 19. However, as Hilton points out, the ALJ did not discuss any specific information about unimpaired individuals in similar businesses in Hilton's community.[8] SSR 83-34 cautions "the lack of conclusive evidence as to the comparability of the required factors will result in a finding that work performed is not [substantial gainful activity]." SSR 83-34 provides "[d]evelopment must be specific" with each work factor described in detail, showing its contribution to the business operation, and further, "General descriptions are considered inconclusive evidence for the point-by-point comparison that is required." The ALJ's opinion is devoid of any comparison between a group of unimpaired persons of similar self-employment to Hilton, and instead, at most, includes the "general description" SSR 83-34 prohibits. Similarly to criticisms of the ALJs' opinions in Mascio and Monroe, the ALJ's decision here cannot be affirmed where the court is "left to guess [at] how the ALJ arrived at his conclusions" or the ALJ fails to "build an accurate and logical bridge from the evidence to his conclusion." Mascio, 780 F.3d at 636; Monroe, 826 F.3d at 189. Accordingly, I conclude that substantial evidence does not support the ALJ's conclusion that Hilton engaged in substantial gainful activity under test two.

A claimant meets the third test for substantial gainful activity if his work activity, although not comparable to that of unimpaired individuals, is clearly worth the applicable earnings guideline for 2014, calculated as set forth in § 404.1574(b)(2), when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work he is doing. 20 C.F.R. § 404.1575(a)(2). Stated differently, the third test

---

[7] Hilton testified at the hearing that she waited on customers, cut fabric, taught classes, and did inventory as store owner. R. 57. In her work history report, Hilton indicated that she worked 8–12 hours per day, 6 days a week. R. 196.

[8] Hilton testified that her business was located in "the middle of Pulaski downtown." R. 49.

9

asks what amount claimant would earn had she been paid the value of the services she supplied to the business. In 2014, the Social Security guidelines determined that services valued at $1,040.00 or more per month constituted substantial gainful activity. The ALJ found that Hilton "[a]s the sole proprietor of a retail store who ran the store with minimal help from her daughter, [her] services to the business were worth at least $1,040 per month."[9] R. 19. Thus, the issue becomes whether substantial evidence supports the ALJ's finding that Hilton's services were worth $1,040 per month. However, as in test two, there is no evidence in the record regarding the value of Hilton's services, and whether her services were worth $1,040 per month. The Commissioner argues that there is no error because using the 2010 federal minim wage of $7.25 per hour, Hilton's work would be worth between $1,160 and $1,740 per month, which is above the applicable minimum of $1,040 per month. However, Hilton's retail store sustained a $41,286 loss in 2010, and there is no direct evidence as to what Hilton's services were worth every month. See Stewart v. Sullivan, 947 F.2d 942 (4th Cir. 1991) (finding that claimant's activity was not gainful and noting that claimant had been "made a victim of his own work ethic [because] [t]he same activity that the Secretary finds 'gainful' failed to yield [claimant] a dime for years and ultimately caused his disability insured status to expire"). While the ALJ notes that Hilton's job duties included assisting customers, teaching classes, and doing inventory, there is no discussion in his opinion of what these activities actually involved, or when or how long Hilton performed the activities. R. 19. In Davis v. Astrue, the court remanded to consider new evidence consisting of affidavits from coworkers indicating the claimant "was unable to perform regular work activities during the period of time in which she owned the florist business" and noted "the question is whether the activity was worth anything to the business." 2008 WL

---

[9] The ALJ did recognize that Hilton's business was not commercially successful, noting during the hearing, "[The store] didn't seem to generate much money. There's no income really generated." R. 48. Indeed, Hilton's tax returns for 2010 show a $41,286 loss. R. 252.

10

2220924, at *3 (W.D. Va. May 29, 2008). Here, it is not clear from the record whether Ms. Hilton's job duties were "worth anything to the business." Id. Accordingly, I conclude that, as in test two, there is not sufficient evidence in the record to determine whether Hilton engaged in substantial gainful activity under test three.

I now address Hilton's remaining allegations of error related to the ALJ alternative finding at step four.[10]

**C. Treating Physician**

Hilton argues that the ALJ erred by failing to explain why he gave "little weight" to the opinion of her treating physician, Dr. Lovelace. Hilton claims that the factors an ALJ is required to consider when determining the weight to give a treating source medical opinion weighed in favor of giving great weight to Dr. Lovelace's opinion.

Dr. Lovelace's November 12, 2015 opinion indicates that Hilton could sit, stand, and walk less than two hours, and would be absent from work about three times a month because of her impairments. R. 631–32. Dr. Lovelace noted that Hilton's limitations related back to July 2010. R. 632. The ALJ gave this opinion little weight, writing:

> Dr. Lovelace provided no supporting rationale whatsoever for the assertion that [Hilton] had been limited to less than sedentary work since the alleged onset date of July 20, 2010. Contrary to this assertion, the treatment notes kept by Dr. Lovelace do not discuss objective abnormalities so significant that [Hilton] would not be able to sit for even two hours total in an 8-hour workday, or need to miss work 3 times per month. Dr. Lovelace's assessment is also contrary to the evidence that [Hilton] continued to work through the [date last insured].

---

[10] I must address Hilton's remaining allegations because remand would not be necessary if substantial evidence supports the ALJ's alternative finding that Hilton was not disabled at step four, as remand would not result in a different result. See Shinseki v. Sanders, 556 U.S. 396, 409–10 (2009) (stating that the party attacking the agency determination normally bears the burden of showing that an error was harmful); Garner v. Astrue, 436 Fed. App'x 224, 226 n.* (4th Cir. 2011) (applying the Sanders harmless-error standard in a Social Security-disability case).

11

R. 28–29. The ALJ supports his decision by noting that the state agency medical consultants "declined to assess [Hilton's] functional abilities prior to the [date last insured] due to insufficiency of evidence," and characterizing this refusal as "underscor[ing] an absence of evidence prior to the [date last insured] restricting [Hilton] all the way down to the sedentary exertional level." R. 29. However, the ALJ does not adequately explain how the state agency doctor's *absence* of an assessment supports the ALJ's conclusions.[11] Certainly, the ALJ does not explain why the state agency physicians' opinions are more valid than Dr. Lovelace's. The ALJ also gave substantial weight to Hilton's VA disability rating of 10% for her right knee impairment "because Hilton's ability to perform light work through the [date last insured] demonstrates that she was not totally unable to work." R. 27. While I recognize that under Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 343 (4th Cir. 2012), an ALJ must give substantial weight to a VA disability rating, unless the record clearly demonstrates that less weight is appropriate, the ALJ's circular statement here provides essentially no analysis and also does not explain how the VA disability rating impacts or relates to Dr. Lovelace's opinion.

The social security regulations require that an ALJ give a treating source opinion controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to give the opinion: (1) the length of treatment and frequency of examination;

---

[11] No consultative examinations were requested. Pl.'s Br. at 7, n. 4, Dkt. No. 13.

12

(2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D.Va. Dec. 29, 2010). Further, only when the ALJ explains his conclusions and identifies the evidence in the record supporting those conclusions can a court meaningfully review whether the ALJ's decision is supported by substantial evidence. " Knapp v. Colvin, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016) (quoting Monroe, 826 F.3d at 191), report and recommendation adopted, 2016 WL 4482419 (W.D. Va. Aug. 23, 2016) ("The failure of an ALJ to specify what treatment history or evidence does not support a particular opinion means 'the analysis is incomplete and precludes meaningful review.'").

The ALJ recounted in detail Hilton's medical records, including her treatment with Dr. Lovelace, noting that Dr. Lovelace performed two surgeries on Hilton's right knee, the first in 2009 and the second in June 2010, shortly prior to her alleged onset date. Dr. Lovelace's treatment notes consistently document Hilton's reports of pain, swelling, and weakness in her right knee, as well as back pain. Further, the ALJ specifically emphasized the objective abnormalities found by Dr. Lovelace, including limited range of motion in the right knee to 100 degrees in November 2009, 110 degrees in December 2009, and improved to 110 degrees in January 2010, and crepitus in the right knee in September 2010. R. 23, 25, 270–73. However, the ALJ fails to specify what evidence in the medical record leads him to discount Dr. Lovelace's opinion. The ALJ merely states that Dr. Lovelace's treatment notes "do not discuss objective abnormalities so significant" that they would support his conclusions. Further, in his step four

13

analysis, the ALJ uses the fact that Hilton was working through her date last insured to support his finding that she was not disabled.[12] R. 27, 29. However, I have concluded that the record did not support the ALJ's determination that Hilton was engaging in substantial gainful activity through her date last insured.[13]

Here, the ALJ does not fulfill his duty to explain the reasons he concluded Dr. Lovelace's opinion is unsupported by his clinical findings, or deserves such little weight. The ALJ did not adequately analyze Dr. Lovelace's opinion as required by 20 C.F.R. § 416.927(c)(2), including explaining why and how the other medical opinions and medical evidence in the record caused him to doubt the validity of Dr. Lovelace's opinion. Without this analysis, I am left to mine the record for facts to support the ALJ's conclusions and essentially fill in the blanks the ALJ left in his analysis. This I cannot do. The record may well contain evidence to support the ALJ's conclusions, but it is the responsibility of the ALJ to set out the evidence (with an adequate explanation) in his opinion.

Because I find that remand is warranted based on the ALJ's failure adequately explain the weight given to Hilton's treating physician, Hilton's additional allegations of error will not be addressed. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take into consideration Hilton's remaining allegations of error.

---

[12] The ALJ states, "The fact that [Hilton] was able to continue running the store through December of 2010 demonstrates that she was able to perform light work consistent with her past relevant work through the [date last insured]." R. 27. And further, "The alleged limiting effects of these impairments are not fully credible in light of [Hilton's] treatment history and objective medical findings showing fewer restrictions, together with ongoing work activity after the alleged onset date." R. 29.

[13] I recognize that I did find that substantial evidence supported the ALJ's conclusion that Hilton operated her store through her date last insured, closing it in December 2010. However, I also found it was not clear what Hilton's job duties involved, when or how long they were performed, or whether they were even worth anything to the business.

## CONCLUSION

Accordingly, Hilton's Motion for Summary Judgment is **GRANTED** and the Commissioner's Motion for Summary Judgment is **DENIED** and this case is **REVERSED** and **REMANDED** to the Commissioner.

Entered: July 11, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge